# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Stephen Rice, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:17-cv-1274-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| M-E-C Company, John Quick, Jr., | ) | |
| Lynn Ann Lichtenfeld, | ) | |
| Pamela Walden, Michael Hudson, | ) | |
| Jacob R. Johnston, Reuben Andreas, | ) | |
| Reuben Roff Andreas Trust, | ) | |
| John Andreas, Amanda Fisk, | ) | |
| Joan K. Parker, Stephen D. Parker, | ) | |
| and W. Kent Shields, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on motions to dismiss filed by Defendants Pamela Walden (ECF No. 4), Michael Hudson and W. Kent Shields (ECF No. 15), Stephen D. Parker (ECF No. 40), Lynn Ann Lichtenfeld (ECF. No. 44), Jacob R. Johnston (ECF No. 54), and John Andreas and Amanda Fisk[1] (ECF. No 71). For the reasons set forth herein, the motions of Defendants Walden, Hudson, Shields, Parker, and Johnston are granted; the motions of Defendants Lichtenfeld, Andreas, and Fisk are denied.

## BACKGROUND

This action arises out of a dispute over wages and benefits allegedly owed to Plaintiff Stephen Rice. Plaintiff began working for Defendant M-E-C Company, headquartered in Kansas, in September 2012. Plaintiff alleges that he was tasked with finding a location for a new M-E-C office and decided on Charleston, South Carolina. Plaintiff relocated to South Carolina and

---

1. Amanda Fisk is referred to as Amanda Andreas in some filings.

M-E-C's South Carolina office opened in 2014.  Beginning in the fourth quarter of 2015, Plaintiff alleges he was not paid commissions owed under his employment contract.  On May 9, 2016, Defendants Amanda Fisk and Lynn Lichtenfeld met with Plaintiff in the South Carolina office.  The following day, Plaintiff alleges that his cell phone was disconnected, the locks were changed on the office, and he received an email from Defendant Lichtenfeld stating he was terminated.  Plaintiff alleges that Defendant M-E-C failed to contribute to his retirement plan in violation of the Employee Retirement Income Security Act, wrongfully terminated him, and converted his intellectual and personal property to their own use following his termination.

Sometime after his move to Charleston but before his termination, Plaintiff alleges that Defendant M-E-C did not make timely payments on Plaintiff's leased home in Charleston.  In this period, Plaintiff also alleges that Defendant John Quick, M-E-C President, agreed that M-E-C would absorb the lost value of Plaintiff's home in Bartlesville, Oklahoma.  Plaintiff purchased that home when he relocated to work for M-E-C in Kansas, but then put it up for sale after relocating to Charleston.  Finally, Plaintiff alleges that Defendants knowingly made false statements about him, intentionally inflicted emotional distress, and conspired against him.  Plaintiff seeks damages based on these allegations.

## PROCEDURAL HISTORY

Defendants removed this case on May 17, 2017.  On May 19, Defendant Pamela Walden moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  Plaintiff responded on June 18, and Walden did not reply.

On June 7, Defendants Michael Hudson and W. Kent Shields moved to dismiss for lack of personal jurisdiction.  Plaintiff responded on June 29, and Hudson and Shields replied on July 6.

On July 3, Defendant Stephen D. Parker moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff responded on July 9, and Parker replied on July 17.

On July 7, Defendant Lynn Ann Lichtenfeld moved to dismiss for lack of personal jurisdiction. Plaintiff responded on July 14, and Lichtenfeld did not reply.

On August 4, Defendant Jacob R. Johnston moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. Plaintiff responded on August 13, and Johnston replied on August 21.

On September 21, Defendants John Andreas and Amanda Fisk moved to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff responded on October 5, and Andreas and Fisk did not reply.

Accordingly, these motions are now ripe for review.

**DISCUSSION**

Defendants Walden, Hudson, Shields, Parker, Lichtenfeld, Johnston, Andreas, and Fisk move to dismiss for lack of personal jurisdiction. The motions of Defendants Walden, Parker, Johnston, Andreas, and Fisk also assert that Plaintiff has failed to state a claim upon which relief can be granted. The Court turns first to the challenges to personal jurisdiction and then to the remaining alleged failures to state a claim.

**I. Personal Jurisdiction**

As a court of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), this Court must remain mindful of the fact that "[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties," *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (citing

*Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938); *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 465 (1873)).

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need only prove a prima facie case of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In making this determination, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. However, the court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320, (4th Cir. 2000) (unpublished table decision) (per curiam) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). The plaintiff's showing must be based on "specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Additionally, if "a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations." *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835 (D.S.C. 2015) (citing *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984)). Instead, the plaintiff must "present an affidavit or other evidence showing jurisdiction exists over the nonresident defendant," with any continuing factual conflicts resolved in the plaintiff's favor. *Id.*; *see also Clark v. Remark*, 993 F.2d 228 (4th Cir. 1993) (unpublished table decision) (per curiam). "In reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." *Magic Toyota*, 784 F. Supp. at 310 (quotation omitted).

"[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause. *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to be coextensive with, and reach the outer limits allowed by, the Due Process Clause. *E.g.*, *ESAB Grp. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). Therefore, the dual jurisdictional requirements collapse into the due-process analysis. *See id.* Accordingly, the scope of the inquiry is whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). A plaintiff must establish that each defendant has had sufficient minimum contacts with the forum state. *Magic Toyota*, 784 F. Supp. at 313.

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See ESAB Grp. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997). A court may exercise general jurisdiction over a defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924.

In order to exercise specific jurisdiction over a defendant, the defendant must have purposefully directed activities toward the forum state and the alleged injuries must arise out of or relate to those activities. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

The Fourth Circuit has developed a three-part test to determine whether the exercise of specific personal jurisdiction in a particular case comports with due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). "The requirement of purposeful availment 'is not susceptible to mechanical application[,]'" and courts look to several "nonexclusive factors" to determine whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state. *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278). Those factors are:

> (1) whether defendant maintains offices or agents in the forum state;
> (2) whether defendant owns property in the forum state;
> (3) whether defendant reached into the forum state to solicit or initiate business;
> (4) whether defendant deliberately engaged in significant or long-term business activities in the forum state;
> (5) whether the parties contractually agreed that the law of the forum state would govern disputes;
> (6) whether defendant made in-person contact with the resident in the forum state regarding the business relationship;
> (7) the nature, quality, and extent of the parties' communications about the business being transacted; and
> (8) whether the performance of contractual duties was to occur within the forum.

*Id.* at 406.

With respect to claims against employees or corporate officers, "personal jurisdiction of a non-resident individual cannot rest on the mere fact that a person is an officer or employee of a defendant corporation" subject to personal jurisdiction in South Carolina. *Scurmount LLC v. Firehouse Rest. Grp., Inc.*, No. 4:09-cv-618-RBH, 2010 WL 11433199, at *12 (D.S.C. May 19, 2010) (citing *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983)). Instead, "[w]hat is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Magic Toyota*, 784 F. Supp. at 315 (quotation omitted); *see also Addy's Harbor Dodge v. Glob. Vehicles U.S.A. Inc.*, No. 4:11-cv-1065-RBH, 2014 WL 1779450, at *5 (D.S.C. May 5, 2014).[2] Direct, personal involvement exists when the defendant is the "guiding spirit" or "central figure" behind a challenged corporate activity. *Magic Toyota*, 784 F. Supp. at 313–15. For example, in *Magic Toyota*, the court found that it had personal jurisdiction over corporate officers who were alleged to have taken purposeful actions that resulted in injury to the plaintiff in South

---

2. The Court is aware that this Court has questioned the precise contours of personal jurisdiction for corporate agents in *Companion Property and Casualty Insurance Company v. U.S. Bank National Association*, No. 3:15-cv-1300-JMC, 2016 WL 6781057 (D.S.C. Nov. 16, 2016). As the *Companion Property* court noted, in *Columbia Briargate*, the Fourth Circuit announced a "rule" for determining when out-of-state corporate agents are subject to personal jurisdiction. 713 F.2d at 1064–65. The Fourth Circuit, applying the announced rule, found there was personal jurisdiction over a vice president who allegedly committed a tort in the forum state. *Id.* at 1065. Subsequently, this Court looked to *Columbia Briargate* for guidance in determining whether, and under what circumstances, a corporate agent who was not alleged to have committed an act in the forum state could be subject to personal jurisdiction. *See Magic Toyota*, 784 F. Supp. at 315; *Addy's Harbor Dodge*, 2014 WL 1779450, at *5. The *Companion Property* court, however, concluded that these opinions deviated from *Columbia Briargate* in finding that corporate agents could be subject to personal jurisdiction for actions taken outside the forum state. 2016 WL 6781057, at *18. The court said that the rule set forth in *Columbia Briargate* "prevents the exercise of jurisdiction over an out-of-state corporate agent when his only connection to [the challenged corporate activity] occurs outside the state." *Id.* The *Companion Property* court went on to find that under the "straightforward application of the *Columbia Briargate* rule," an out-of-state corporation that served as a corporate secretary of a company that did business in South Carolina was not subject to personal jurisdiction on the basis of actions it took as that company's officer outside of South Carolina. *Id.* The court also held that the corporate secretary would not be subject to personal jurisdiction under the "direct personal involvement" test used by *Magic Toyota* and *Addy's Harbor*. *Id.* at *20. Similarly, in the present matter, the Court finds that the alternative test results in the same outcome for each defendant because those that were never alleged to have been in this state for business also are not alleged to have direct personal involvement with the challenged conduct, while those that are alleged to have direct personal involvement are also alleged to have either personally taken actions in South Carolina (as with Lichtenfeld and Fisk) or taken action through a representative in the state (as with Andreas).

7

Carolina. *Id*. at 315. However, the same court found that it did not have personal jurisdiction over other corporate officers who were only referred to collectively, and therefore granted those officers' motions to dismiss. *Id*. at 313–14.

Like officers and employees, shareholders in a corporation are not generally subject to personal jurisdiction in a forum simply because the corporation was formed or conducts business there. *Kidston v. Res. Planning Corp.*, No. 2:11-cv-2036-PMD, 2011 WL 6115293, at *3 (D.S.C. Dec. 8, 2011). However, when shareholders are personally involved in the decision-making process, their status as shareholders is not always sufficient to defeat jurisdiction. *See Springs Indus. v. Gasson*, 923 F. Supp. 823, 827 (D.S.C. 1996).

### A. Pamela Walden

Defendant Walden moved to dismiss for lack of personal jurisdiction asserting that her only connection to Plaintiff's claims is that she inherited M-E-C stocks amounting to less than 1% of the company's shares. She has never conducted business in South Carolina and has only been in the state once on vacation. In response, Plaintiff states that he "will consent to the dismissal of Ms. Walden based on the fact that she was not a member of the board and therefore did not withhold wages." (Pl.'s Resp. Def. Pamela Walden's Mot. Dismiss, ECF No. 22, at 5.) The Court agrees that Walden's dismissal is warranted and therefore grants her motion to dismiss.

### B. Michael Hudson and W. Kent Shields

Defendants Hudson and Shields argue that they are not subject to general personal jurisdiction because they lack the continuous and systematic contact with South Carolina necessary to be regarded as "at home" in the state. Hudson and Shields live in Kansas and are both former employees of M-E-C and worked in M-E-C's Kansas office until their respective retirements. Both own small quantities of M-E-C stock. Hudson has never travelled to South Carolina for business,

8

while Shields travelled to South Carolina once on business in 1979 or 1980. Neither owns property in South Carolina. Plaintiff argues that they are nonetheless subject to general jurisdiction due to their affiliations with M-E-C, which has had a continuous presence in the state. However, personal jurisdiction must be established with respect to each defendant individually, and "personal jurisdiction of a non-resident individual cannot rest on the mere fact that a person is an officer or employee of a defendant corporation." *Scurmount*, 2010 WL 11433199, at *12. Because plaintiff has not shown that Hudson and Shields had a continuous and systematic presence in South Carolina, Plaintiff has failed to establish that they are subject to general jurisdiction.

Hudson and Shields argue they are not subject to specific jurisdiction because they have not availed themselves of the privileges of conducting activities in South Carolina, as required by the first prong of the *Consulting Engineers* test. Plaintiff argues that Defendants did avail themselves of the benefits of conducting business in South Carolina because they were M-E-C board members and the Board voted to open the South Carolina office. However, Hudson and Shields each state in their affidavits that they were never board members. Thus, Plaintiff cannot rest his assertion of personal jurisdiction on the fact that Defendants were board members without presenting an affidavit or other evidence that counters Defendants' affidavits. *See Callum*, 137 F. Supp. 3d at 835. Plaintiff's affidavit makes the much weaker claim that Plaintiff "*believed* all listed Defendants to be members of the board and owners of the company, M-E-C." (Aff. Stephen Rice, ECF No. 34-1, at 2 (emphasis added).) Resolving the facts, as stated in the affidavits, in the light most favorable to Plaintiff, Plaintiff has not established that Defendants were members of the Board.

Plaintiff also alleges that Hudson and Shields are subject to specific jurisdiction because they had control over Plaintiff's employment as M-E-C shareholders. However, shareholders in a

corporation are not generally subject to personal jurisdiction in a forum simply because the corporation conducts business there. *Kidston*, 2011 WL 6115293, at *3. Though personal jurisdiction may be exercised when a shareholder has personal involvement in a decision, as in *Springs Industries v. Gasson*, 923 F. Supp. at 827, Plaintiff has not alleged facts supporting the conclusion that Hudson and Shields' status as shareholders led to their personal involvement in decisions affecting him.

Finally, Plaintiff alleges that Shields' role as supervisor of the human resources department subjects him to specific jurisdiction. It is agreed that Shields contacted Plaintiff about employment with M-E-C and was one of the people who interviewed him for a position in M-E-C's Kansas office. Thus, Shields was personally involved in the decision to hire Plaintiff in Kansas. However, under *Magic Toyota*, Plaintiff must allege that Shields was personally involved in decisions that were causally related to the plaintiff's injury in South Carolina. 784 F. Supp. at 315. Plaintiff claims that he was not paid wages beginning in the fourth quarter of 2015, but Shields has stated that he retired on July 31, 2015, months before Plaintiff's claimed injury from unpaid wages. Plaintiff has not alleged facts that suggest Shields had any personal involvement, much less was the "guiding spirit" or "central figure" behind the payment of wages to Plaintiff after Shields retired. Similarly, Plaintiff has not alleged facts that support his assertion that Shields was involved in Plaintiff's termination, which also occurred after Shields retired. While the complaint does not make clear when his claim for unpaid retirement benefits begins, Plaintiff has not alleged any facts supporting a claim that Shields had personal involvement in decisions about Plaintiff's retirement benefits. The fact that Shields was a supervisor of human resources and thus was possibly among the people responsible for ensuring that M-E-C properly paid employee benefits is not sufficient when Plaintiff has not alleged that Shields was ever personally involved. *See*

*Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 267 (D.S.C. 1995) (finding that "general allegations that the mismanagement of [a company] by the individual defendant[-vice president] resulted in Plaintiffs' loss of money" were insufficient to hold the vice president subject to personal jurisdiction). The fact that Shields periodically communicated with the South Carolina office, including a call with Plaintiff about a dryer and communications with the controller about invoices, does not show that Shields purposefully engaged in activity in South Carolina. *See Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 615 (D.S.C. 2013) (finding that communications "limited to several phone calls" and communications unrelated to the plaintiff's claim did not subject the defendant to personal jurisdiction).

Because the Court finds that Plaintiff has failed to establish that Hudson and Shields purposefully availed themselves of the privilege of conducting business in South Carolina, the Court need not address the second and third prongs of the *Consulting Engineers* test. 561 F.3d at 278. The Court finds that Plaintiff has failed to make a prima facie case that Hudson and Shields are subject to specific jurisdiction. Since Plaintiff has not met his burden of showing that general or specific jurisdiction is proper, Plaintiff has not met his burden of establishing personal jurisdiction over Hudson and Shields.

### C. Stephen D. Parker

Defendant Parker argues that he is not subject to general jurisdiction since he is not a resident of South Carolina and does not otherwise have such continuous and systematic contacts with the state to be regarded "at home" here. As with Defendants Hudson and Shields, Plaintiff alleges that Parker is subject to general jurisdiction due to his connections with M-E-C. While Hudson and Shields were employees and shareholders of M-E-C, Parker was a member of the M-E-C Board of Directors. This difference does not change the general jurisdiction analysis. As

provided above, Plaintiff cannot use the Court's jurisdiction over M-E-C to exercise general jurisdiction over employees, shareholders, or officers who do not have such continuous and systematic contacts with South Carolina that they may be regarded at home here. Since Plaintiff has not alleged such contacts, he has not made a prima facie case that the exercise of general jurisdiction is proper.

Parker argues that his two year membership on the M-E-C Board, from April 2014 to May 2, 2016, is insufficient to establish specific jurisdiction because he did not purposefully avail himself of the privileges of conducting activities within South Carolina through that role. Plaintiff argues that Parker is subject to specific jurisdiction because he operated a business in South Carolina by serving on the Board, and because the Board voted to open the South Carolina office, made the decision not to pay Plaintiff his wages, failed to pay Plaintiff wages and benefits, terminated Plaintiff, and converted Plaintiff's property. In his affidavit, Parker states that he participated in five or six Board meetings outside of South Carolina, did not make decisions about Plaintiff's hiring or firing (neither of which occurred during his time on the Board), and did not vote on opening the South Carolina office. In light of Parker's affidavit, Plaintiff cannot rely on mere allegations, but must put forth an affidavit or some other evidence alleging facts that support the exercise of jurisdiction. *See Callum*, 137 F. Supp. 3d at 835. Plaintiff's affidavit states that M-E-C President Quick "instructed me to figure out where M-E-C needed to go and get it set up. Based on that instruction I performed extensive research and the Company opened an office in Charleston, SC. . . . Quick presented the move to the Board. The Board was aware of the move to Charleston." (Aff. Stephen Rice, ECF 45-1, at 2.) Resolving all facts laid out in the affidavits in Plaintiff's favor, Plaintiff has not alleged that Parker or the Board ever voted on opening the South Carolina office. Rather, Plaintiff's affidavit suggests that the Board was merely made aware of

Plaintiff and Quick's decision to open the office. Plaintiff's affidavit does not make any claims regarding the Board's role in M-E-C's alleged failure to pay his wages and benefits. The emails presented by Plaintiff show that the Board discussed Plaintiff's employment on May 4, 2016, but the same email also states that the Board approved of Parker's resignation from the Board as part of the same meeting. Plaintiff's allegations of Parker's involvement amount to no more than general allegations of mismanagement and fall short of the sort of direct, personal involvement which has subjected officers and directors to personal jurisdiction. *See Sheppard*, 877 F. Supp. at 267; *Magic Toyota*, 784 F. Supp. at 315. Plaintiff alleges, at most, that Parker had power to take actions affecting M-E-C, but this is insufficient when Plaintiff has not alleged facts supporting Parker's involvement in any particular decision or M-E-C's day-to-day operations. *See Salley v. Heartland–Charleston of Hanahan, SC, LLC*, No. 2:10-cv-791-DCN, 2010 WL 5136211, at *5 (D.S.C. Dec. 10, 2010) (explaining that South Carolina courts look to whether an entity has actually used its power to purposefully act within the state, rather than whether it could have acted, and holding that defendant's ability to control a budget was insufficient to establish minimum contacts where the plaintiff had not alleged facts supporting that defendant actually did control the budget); *Addy's Harbor Dodge*, 2014 WL 1779450, at *6–7 (finding that neither the CEO nor the Chairman of the Board of a defendant company could be subject to personal jurisdiction given that their affidavits stated that they were not involved in the day-to-day operation of the company and the plaintiff had not alleged their direct involvement in tortious activity in the state). Consequently, Plaintiff has failed to establish that Parker purposefully availed himself of the privilege of conducting activity in South Carolina. The Court need not address the remaining prongs of the *Consulting Engineers* test. 561 F.3d 273, 278. The Court finds that Plaintiff has failed to make a prima facie case that Parker is subject to specific jurisdiction.

Since Plaintiff has not met his burden of showing that general or specific jurisdiction is proper, Plaintiff has not met his burden of establishing personal jurisdiction over Parker.

### D. Lynn Ann Lichtenfeld

Defendant Lichtenfeld's very brief motion to dismiss asserts that the arguments of Walden, Hudson, Shields, and Parker apply to her, and thus she is not subject to personal jurisdiction. Unlike Walden, Hudson, and Shields, but like Parker, it is undisputed that Lichtenfeld's relationship to M-E-C is that she was a board member. Lichtenfeld is the sister of Stephen Parker, and the daughter of David Parker, a former president of M-E-C, whose ownership of approximately one-third of M-E-C's stock entitled him to a board position. Stephen Parker filled that board position from April 2014 until May 2, 2016, when he resigned and passed the position to Lichtenfeld. The Court agrees with Lichtenfeld that the above defendants' arguments against subjecting them to general jurisdiction similarly apply to her: because Lichtenfeld's only alleged connection to the state is her membership on the M-E-C Board, Plaintiff has not alleged facts sufficient to regard her as "at home" in the state, and thus Plaintiff has not made a prima facie case for general jurisdiction over Lichtenfeld.

For purposes of specific jurisdiction, Lichtenfeld's relationship to the claims is very different than that of other defendants. Plaintiff alleges that he met with Lichtenfeld on May 9 in M-E-C's South Carolina office, and Lichtenfeld concedes that this meeting occurred. Thus, Lichtenfeld "made in-person contact with the resident in the forum state regarding [a] business relationship" in satisfaction of one of the purposeful availment factors explicitly listed in *Consulting Engineers*. 561 F.3d at 278. In addition, Plaintiff alleges that when he went to the office on May 10, the day after the meeting with Lichtenfeld, the locks had been changed. Later that day, he alleges he received an email from Lichtenfeld informing him of his termination. He

alleges that Lichtenfeld refused to return his calls and as a result of the changed locks, was unable to retrieve personal items from the office. Plaintiff also alleges that Lichtenfeld personally made the decision to withhold paychecks and bonuses from him, and that she instructed M-E-C employees to cease lease payments on his South Carolina residence. These allegations are not based on what control Lichtenfeld might have had as a board member, but on specific actions Lichtenfeld allegedly, personally took. Drawing all inferences in Plaintiff's favor, the Court can infer that Lichtenfeld was personally involved in the decision to terminate Plaintiff, the decision to change the locks which caused Plaintiff to be deprived of his personal property, at least one decision to withhold compensation, and the decision to stop lease payments on Plaintiff's residence. These allegations of specific, direct, personal involvement in decisions that caused Plaintiff's injuries are sufficient to satisfy the purposeful availment prong of the *Consulting Engineers* test. *Magic Toyota*, 784 F. Supp. at 315. As required by the second prong of *Consulting Engineers*, Plaintiff's claims for wrongful termination, conversion, and wrongful retention of wages arise directly from Lichtenfeld's alleged actions and the Court could infer that Plaintiff's other claims have a connection to those actions. Finally, under the third prong, Lichtenfeld has put forth no reason to suggest that subjecting her to personal jurisdiction in a state she voluntarily travelled to for M-E-C business would be constitutionally unreasonable. While travelling from her home in Texas to South Carolina is undoubtedly inconvenient, the Court does not find that it would be "so gravely difficult and inconvenient" as to put Lichtenfeld at a "severe disadvantage" relative to her opponent. *Nolan*, 259 F.3d at 217 (quoting *Burger King*, 471 U.S. at 478). The Court finds that subjecting Lichtenfeld to personal jurisdiction in South Carolina is especially unlikely to "offend constitutional dues process principles" given that Lichtenfeld, as one of the few defendants alleged to have personal knowledge of the events of May 9 and 10, is "likely [to]

be called upon to testify in this forum." *Ameristone Tile*, 966 F. Supp. 2d at 615 (finding that the probability that defendants would be called to testify on behalf of a corporation they were affiliated with weighed in favor of finding that subjecting them to personal jurisdiction would be constitutionally reasonable.) The Court finds that Plaintiff has established a prima facie case for subjecting Lichtenfeld to specific personal jurisdiction.

### E. Jacob R. Johnston

Defendant Johnston's relationship to this case is almost exactly that of Defendant Parker's. Like Parker, Johnston was a member of the M-E-C Board when Plaintiff claims he was first underpaid, but left the Board before Plaintiff's termination and the surrounding events. As with Hudson, Shields, and Parker, Plaintiff seeks to establish general jurisdiction over Johnston through his relationship with M-E-C. Since Plaintiff similarly fails to allege that Johnston has contacts with South Carolina such that he could be regarded as "at home" in the state, Plaintiff fails to make a prima facie case for subjecting Johnston to general jurisdiction.

Like Parker, Johnston argues that he cannot be subject to specific jurisdiction because his service on the Board did not amount to purposeful availment under *Consulting Engineers*. Like Parker, Johnston included an affidavit stating that he never voted on any corporate matters. Plaintiff asserts that Johnston is subject to specific jurisdiction because he was "a member of the board during the move to South Carolina and when many of the decisions regarding Plaintiff's pay and failure to contribute to Plaintiff's 401(k) were made." (Pl.'s Resp. Def. Jacob R. Johnston's Mot. Dismiss, ECF No. 57, at 6.) Plaintiff also repeats the general allegations made against Parker. As with Parker, the fact that Johnston was on the Board or could possibly have exercised some control over Plaintiff's employment, wages, and benefits makes no difference when Johnston has stated in his affidavit that he never participated in any decisions. Critically, Plaintiff has also not

16

alleged that Johnston had any direct, personal involvement with the events giving rise to his claims. Plaintiff has failed to allege facts that support his argument that Johnston purposefully availed himself of the privilege of conducting activity in South Carolina. Thus, the Court need not address the remaining prongs of the *Consulting Engineers* test. Because Plaintiff has failed to establish general or specific jurisdiction, Plaintiff has not made a prima facie case for the Court's exercise of personal jurisdiction over Johnston.

### F. John Andreas and Amanda Fisk

Defendants Andreas and Fisk moved to dismiss by incorporating "all the arguments and memorandums" submitted by the above defendants and attaching their affidavits. (John and Amanda Andreas' Mot. Dismiss, ECF No. 71, at 1.) Andreas and Fisk do not explain how or why those arguments apply to them, and they do make any other arguments in their one-paragraph motion. As with above defendants, Plaintiff relies largely on Andreas and Fisk's relationship to M-E-C in an attempt to establish general jurisdiction. Additionally, Plaintiff argues that Fisk's visit to M-E-C's South Carolina office subjects both her and Andreas to general jurisdiction. While a single visit to a forum state can be sufficient to establish specific jurisdiction, general jurisdiction requires such continuous and systematic contacts that a defendant could be considered "at home" in the forum state. *Goodyear*, 564 U.S. at 919. As with the above defendants, Andreas and Fisk do not live in South Carolina and only Fisk has been to the state. The Court finds that Plaintiff has not alleged that they have continuous and systematic contacts such that they could be regarded "at home" in South Carolina. Consequently, Plaintiff has failed to make a prima facie case for general jurisdiction.

With respect to specific jurisdiction, Andreas and Fisk are not in the same position as any of the above defendants so the Court is unable to directly apply the other defendants' arguments

to them. Unlike the above defendants, Andreas and Fisk are alleged to own nearly a third of M-E-C through the John Beman Andreas Trust. Like Lichtenfeld, but unlike the rest of the above defendants, Andreas was still a board member when Plaintiff was terminated, while Fisk was never a board member. Unlike most other defendants, Plaintiff alleges specific interactions that he had with Andreas and Fisk around the time of his termination. It is undisputed that Plaintiff received a call from Fisk on May 4, and Plaintiff alleges that Fisk contacted him on May 5, which Fisk does not deny. Plaintiff alleges that he reiterated his requests for allegedly unpaid wages in the May 4 call, and again on May 5. It is undisputed that Fisk came to the South Carolina office on May 9 and met with Plaintiff. There are few details about what was discussed, but it is undisputed that Fisk's visit was as a representative of Andreas, and that M-E-C business was discussed. Thus Fisk "made in-person contact with the resident in the forum state regarding [a] business relationship" in satisfaction of one of the purposeful availment factors explicitly listed in *Consulting Engineers*. 561 F.3d at 278. Andreas and Fisk both assert in their affidavits that they were not involved in Plaintiff's termination, but Plaintiff's affidavit alleges that Fisk and Lichtenfeld changed the locks on the office, disconnected his cell phone, and sent the termination email. Plaintiff has also provided an email from May 4, a few days before his termination, in which Lichtenfeld indicates that Andreas was on a Board call in which Plaintiff's employment was discussed. (Aff. Stephen Rice, Ex. D, ECF No. 34-5, at 2.) Taking all facts in the light most favorable to Plaintiff, the Court can infer that Fisk and Andreas were personally involved in Plaintiff's termination.

As required by the second prong of *Consulting Engineers*, Plaintiff's claims for wrongful termination, conversion, and wrongful retention of wages arise directly from Fisk's and Andreas's alleged actions and the Court can infer that Plaintiff's other claims have a connection to those actions. Finally, under the third prong, while it is undoubtedly inconvenient for Fisk and Andreas

to travel to South Carolina from their home in California, the Court does not find that it would be "so gravely difficult and inconvenient" as to put them at a "severe disadvantage" relative to Plaintiff. *Nolan*, 259 F.3d at 217 (quoting *Burger King*, 471 U.S. at 478). This finding is supported by the fact that Fisk has made time to come to the state on M-E-C business before. Since Plaintiff has satisfied the *Consulting Engineers* test, he has made a prima facie case that there is specific jurisdiction over Andreas and Fisk. The Court denies their motion to dismiss for lack of personal jurisdiction at this early stage.

## II. Failure to State a Claim upon Which Relief Can Be Granted

The motions filed by Defendants Walden, Parker, Johnston, Andreas, and Fisk also argue that Plaintiff has failed to state a claim upon which relief can be granted. Since Plaintiff has consented to the dismissal of Walden and failed to establish personal jurisdiction over Parker and Johnston, only Andreas and Fisk's motion remains. As discussed above, Andreas and Fisk did not put forth an argument in support of their motion to dismiss, other than to incorporate the arguments of other defendants that do not have their same relationship to Plaintiff's claims. The Court will not and cannot construct Defendants' argument for them. Andreas and Fisk's motion to dismiss for failure to state a claim is denied without prejudice.

## CONCLUSION

For the reasons stated herein, the motions to dismiss of Defendants Walden, Hudson, Shields, Parker, and Johnston are **GRANTED**. The motions to dismiss of Defendants Lichtenfeld, Andreas, and Fisk are **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**October 25, 2017**
**Charleston, South Carolina**